TERESA SMART, administratrix,[1] *vs.* SAFETY INSURANCE
COMPANY.

Hampden. October 3, 1994. - December 13, 1994.

Present: LIACOS, C.J., WILKINS, LYNCH, & GREANEY, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist. *Statute,* Construction. *Words,* "Providing similar coverage."

A household member who owned a motor vehicle and was the named insured on a 1990 Massachusetts automobile insurance policy could not look for coverage to an automobile insurance policy issued to another household member under which there was higher underinsured motorist coverage than under his own policy. [146-150]

CIVIL ACTION commenced in the Superior Court Department on October 22, 1991.

The case was heard by *Francis X. Spina,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*David Wilensky* for the plaintiff.

*Alice Olsen Mann* (*Karyn T. Hicks* with her) for the defendant.

WILKINS, J. This is the third of three cases that we decide today concerning the right of a household member who has a Massachusetts automobile liability policy, covering a vehicle owned by him or her, to recover underinsured motorist benefits under a Massachusetts automobile insurance policy issued to another household member that provides higher underinsured motorist coverage than whatever underinsured motorist coverage is provided under his or her own policy.

---

[1]Of the estate of John W. Brick, Jr.

See *Depina* v. *Safety Ins. Co., ante* 135 (1994); *Goodman* v. *American Casualty Co., ante* 138 (1994).

On July 16, 1990, John W. Brick, Jr. (Brick), the plaintiff's son and household member, was killed in a motor vehicle accident while a passenger in an automobile owned and operated by another. The driver had bodily injury limits of $10,000 for one person and $20,000 for each accident. Two other passengers were also killed in the accident. The driver's insurer paid each estate one-third of the $20,000 coverage. At the time of the accident, Brick owned a motor vehicle and was the named insured on a Massachusetts automobile insurance policy that stated (a) bodily injury coverage of $20,000 for one person and $40,000 for each accident and (b) uninsured and underinsured motorist coverage of $10,000 for one person and $20,000 for each accident. No premium charge was stated for the underinsured motorist coverage. Underinsured motorist coverage was not a required, that is compulsory, coverage. Brick could have elected no such coverage, but, on his application for insurance, he checked underinsured motorist coverage of "$10,000 each person/$20,000 each accident."

The plaintiff as an individual had her own standard Massachusetts automobile insurance policy, issued by the defendant insurer (Safety), effective March 2, 1990, with respect to another vehicle, which provided limits of $100,000 for each person and $300,000 for each accident for bodily injury and for both uninsured and underinsured motorist coverage. It is on this policy that the plaintiff, as administratrix of Brick's estate, relies in seeking to recover underinsured motorist benefits.[2] Safety denied coverage and, by counterclaim, sought a declaration that it was not liable to pay underinsured motorist benefits under the policy issued to the plaintiff. On cross motions for summary judgment, a Superior Court judge ruled in favor of Safety and entered a judgment declaring that Safety had no obligation to provide underinsured motor-

---

[2]For convenience, we shall refer to the plaintiff's claim as that of Brick and not of the administratrix of his estate.

ist coverage under the plaintiff's policy in effect at the time of the action. We allowed the plaintiff's application for direct appellate review.

In the two other underinsured motorist cases decided today, we held that a person who had his or her own Massachusetts automobile policy in effect at the time of an accident could not properly look to the policy issued to another household member under which there was higher underinsured motorist coverage than that provided in his or her own policy. In the circumstances of those cases, the injured person could properly look only to his or her policy for underinsured motorist benefits.

This case is different from the two other cases decided today in two interrelated respects that the plaintiff argues, taken collectively, are significant. First, in the other two cases, the injured person seeking to recover under a household member's policy unquestionably had purchased underinsured motorist coverage for himself or herself in excess of the then compulsory limits for motor vehicle liability coverage. In short, it was clear that each such person did have meaningful underinsured motorist coverage available under his or her own policy. Here, the policy issued to the plaintiff's decedent (Brick) did not provide underinsured motorist coverage with limits in excess of compulsory liability limits, and, therefore, the plaintiff argues, Brick had no underinsured motorist coverage under his policy. The theory is that, because every motor vehicle that is insured will have liability coverage at or above the level of compulsory limits, the purported provision to Brick of underinsured motorist coverage under his policy at the same limits as compulsory limits actually provided no such coverage, and thus he had no underinsured motorist coverage provided under his policy.[3]

---

[3]In *Alguila* v. *Safety Ins. Co.*, 416 Mass. 494, 498 (1993), we held that, if an injured person's available underinsured motorist coverage is no greater than the liability limits of the tortfeasor's coverage, the injured person may not recover underinsured motorist benefits under his own policy even if he recovered less from the tortfeasor's insurer than the underinsured motorist limits of the policy available to him.

The second difference in this case, essential to the plaintiff's argument, is that the relevant policy language is slightly different from that in the other two cases. For reasons that are not apparent, the 1990 Massachusetts automobile insurance policy, under which the plaintiff claims underinsured motorist coverage, had language in its underinsured motorist section different from that in the earlier two cases. The relevant provision in the 1990 standard form policy is that: "We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own *providing similar coverage*" (emphasis added). The emphasized words do not appear in the policy language considered in the two cases previously decided today and are apparently unique to standard form policies issued in 1990.[4] The additional words provide the plaintiff an argument that could not have been made by the claimants in the two other cases decided today, namely that Brick's Massachusetts automobile policy was not one providing similar (i.e., underinsured motorist) coverage, because it provided no such coverage in any meaningful sense, and hence a claim by his estate under the policy issued to his mother for underinsured motorist coverage is not foreclosed.

As a practical matter, Brick had very limited underinsured motorist coverage available under his policy. For accidents occurring in 1990, all insured Massachusetts motor vehicles had liability coverage for accidents occurring upon the ways of the Commonwealth with limits of at least $10,000 for each person, and $20,000 for each accident (see G. L. c. 90, § 34A, as amended through St. 1979, c. 611, §§ 1, 2), and consequently Brick could not turn to his underinsured motorist coverage with respect to an injury or death caused by the operator of a Massachusetts motor vehicle (see *Alguila* v. *Safety Ins. Co.*, 416 Mass. 494, 498 [1993]). It is possible, however, that a tortfeasor's out-of-State vehicle might have

---

[4]In the *Depina* case, *ante* 135 (1994), we considered a claim under the 1989 standard form policy. In the *Goodman* case, *ante* 138 (1994), the relevant standard form policy had been issued in 1992.

had liability coverage with limits less than the limits of Brick's underinsured motorist coverage ($10,000/$20,000), and in such a situation Brick's underinsured motorist coverage would be of some value to him. We shall not pause to decide what circumstances, if any, might make underinsured motorist coverage significant when a tortfeasor's insurer becomes insolvent. Although the underinsured motorist coverage that Brick had, and for which he paid no premium, was not likely to be called into play, it was not illusory. He had similar coverage (i.e., underinsured motorist coverage) to that of his mother. See *Plymouth Rock Assurance Corp.* v. *McAlpine*, 32 Mass. App. Ct. 755, 757-758 (1992). See also *Arbella Mut. Ins. Co.* v. *Hughes*, 36 Mass. App. Ct. 926, 927-928 (1994).

The words "providing similar coverage" in the 1990 standard form of Massachusetts automobile insurance policy should not be given the effect that the plaintiff attributes to them. If we were to do so, we would be violating the intention of the Legislature expressed in the substantial 1988 revision of the Commonwealth's motor vehicle insurance laws (St. 1988, c. 273), most particularly in the amendments to G. L. c. 175, § 113L, made by St. 1988, c. 273, § 47. The 1988 amendment made underinsured motorist coverage optional with the insured, effective January 1, 1989, and left uninsured motorist coverage as a compulsory one. G. L. c. 175, § 113L (1) and (2), as appearing in St. 1988, c. 273, § 46. See St. 1988, c. 273, § 77, as to the effective date. The Legislature further provided that uninsured and underinsured motorist coverage would be available under only one policy (see G. L. c. 175, § 113L [5], as inserted by St. 1988, c. 273, § 47), thereby eliminating the "stacking" of policy coverages that was permitted under prior law.[5] See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 451-452 (1985). The 1988 amendment to G. L. c. 175, § 113L, inserted paragraph (5)

[5]As to purchasers of 1989 private passenger motor vehicle insurance policies, the Legislature directed that each insured be advised that only if underinsured motorist coverage is affirmatively elected will the purchaser's policy provide it. St. 1988, c. 273, § 70.

which provides in part: "in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of coverage available to injured persons." St. 1988, c. 273, § 47.

New paragraph (5) of § 113L also undertook to state the policy to which a person injured in a motor vehicle accident should look for underinsured motorist coverage. A person "who is a named insured [as Brick was] and who suffers bodily injury or death," as Brick did, "while occupying a non-owned motor vehicle registered for highway use [as is the case here] may recover only from the policy providing the highest limits of uninsured [or underinsured] motorist coverage on which such person is the named insured." We read this language as expressing a legislative intent that a person who is a named insured may look for underinsured motorist coverage only to the policy or policies on which he or she is the named insured, at least if that policy provides some underinsured motorist coverage.[6] If Brick elected to have no minimal underinsured motorist coverage, that was his choice. The coverage was optional with him. The statute provides that, as a named insured only on his own policy, Brick may recover only on that policy.

Any different construction of the requirements of § 113L would run contrary to the legislative objective of having each named insured responsible for the extent of his or her underinsured motorist coverage. In a household with two or more insured vehicles, under the plaintiff's interpretation, only one person would need to purchase underinsured motorist coverage, and all other vehicle owners in the household, at no cost to them, would be covered to the limits purchased. Moreover, a person in a household of multiple owners who purchased underinsured motorist coverage in excess of compulsory limits would be penalized for doing so, if such a person could look to the policy of another household member with higher underinsured motorist coverage. In fact, in such a case, it

---

[6]We express no view on what the result would have been if Brick had elected to have no underinsured motorist coverage under his policy.

would be both an inappropriate decision and economically wasteful for such a person to purchase any underinsured motorist coverage. In eliminating the stacking of underinsured motorist claims, the Legislature did not prescribe that there be only one policy providing underinsured motorist coverage in each household. On the contrary, it prescribed that a person who seeks underinsured motorist benefits look to his or her own policy, if there is one, at least one providing some underinsured motorist coverage.

What we have said demonstrates that the plaintiff's policy should not have contained the words "providing similar coverage" and that our denial of recovery in this case is consistent with the intent of the 1988 amendments. Brick had a policy, and, as was his right, did not elect underinsured motorist limits higher than the compulsory liability limits. The Legislature intended that his estate not recover underinsured motorist coverage under his mother's policy on the facts of this case, and the policy issued to Brick's mother is consistent with that objective.

*Judgment affirmed.*