HANOVER INSURANCE COMPANY *vs.* MATTHEW D. SHEDD,
administrator,[1] & another.[2]

Middlesex. January 9, 1997. - March 10, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Insurance,* Coverage, Underinsured motorist, Construction of policy.

A named insured under a 1990 standard policy of motor vehicle insurance,
who elected not to obtain underinsured motorist coverage and received
no coverage, was entitled to such coverage under a 1990 policy issued to
a household member that offered such benefits to household members
without "similar coverage," where an objectively reasonable insured
reading that policy language would have expected to have been covered.
[400-403]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 2, 1992.

The case was heard by *James F. McHugh, III, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*John Delano Boyle* for the plaintiff.

*Joseph R. Valle, Jr.,* for the defendants.

FRIED, J. This case asks us to decide whether a named
insured under a Massachusetts policy who elects not to obtain
underinsured motorist coverage, and thus receives no such
coverage, is entitled to such coverage under a policy issued to
a household member when that policy may be understood to
offer it. The plaintiff insurer, Hanover Insurance Company
(Hanover), sought a declaratory judgment that it was not
required to provide underinsured benefits in this case. A judge
in the Superior Court refused to grant Hanover its requested
declaratory relief and found Hanover liable for such cover-
age. This decision was affirmed by the Appeals Court, see 40
Mass. App. Ct. 1112 (1996), and we granted Hanover's ap-
plication for further appellate review. We affirm.

[1]Of the estate of Hilary Shedd and individually.
[2]Carol Shedd.

## I

The facts are undisputed. On January 26, 1991, Hilary Shedd, the insureds' eighteen year old daughter, was killed when a drunk driver struck the rear of the automobile in which Hilary was a passenger. The drunk driver's vehicle was insured under a policy which provided liability insurance for bodily injury in the amount of $100,000 per person. This entire policy limit was tendered to the Shedds in settlement of a wrongful death action brought in Maryland.

At the time of the accident, Hilary was riding in an automobile which was registered to her and covered by a Massachusetts automobile insurance policy issued by the Arbella Mutual Insurance Company. Under this policy, and pursuant to Massachusetts law (G. L. c. 175, § 113L [1] and [2]), underinsured motorist coverage was not compulsory and Hilary elected to have "zero" limits for this optional coverage. At this same time, Matthew Shedd, Hilary's father, owned an automobile insured under a Massachusetts automobile insurance policy issued by Hanover, which included Hilary as an additional named insured. Pursuant to this policy, Shedd had elected to obtain underinsured motorist coverage up to a limit of $250,000 per person. Following settlement of their wrongful death action, the Shedds presented their claim to Hanover for underinsured motorist coverage. Subsequently, Hanover filed an action for declaratory judgment, disclaiming liability for the Shedds' claims.[3]

## II

The outcome of this case turns on the meaning of provi-

[3]After Hanover commenced this action, both parties submitted motions for summary judgment to determine how the "providing similar coverage" language effected entitlements to underinsured motorist coverage. On January 20, 1994, the judge denied both motions, but held that, if Hilary was determined to be a household member for the purposes of the Hanover policy, then her estate was entitled to recover damages pursuant to the Hanover underinsured motorist coverage which Shedd had purchased, to the extent that damages exceeded the $100,000 already recovered from the tortfeasor's policy. The extent of the Shedds' wrongful death damages has not yet been determined.

Following discovery on the "household member" issue, both parties stipulated to Hilary's status as a household member so that judgment could be entered for the Shedds and the case would be ripe for appeal.

sions under which Shedd was provided underinsured coverage in his policy. The language at issue reads:

"We will pay damages to or for: . . . Any household member . . . while occupying an auto not owned by you . . . We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own providing similar coverage."

To be precise, this case turns on whether Hilary's own Massachusetts auto policy provided "similar coverage" so as to preclude her estate from obtaining damages pursuant to her father's policy. We have examined this same language twice in the recent past. See *Dullea* v. *Safety Ins. Co., ante* 37 (1997); *Smart* v. *Safety Ins. Co.,* 419 Mass. 144 (1994). It is language which is unique to Massachusetts standard form policies issued in 1990, which forms have since been amended so that damages are precluded "for any household member who has a Massachusetts auto policy of his or her own." Because Shedd's Hanover policy became effective in September, 1990, Hanover's coverage duties are determined according to the language then in use.

The outcome in this dispute is not controlled by our decisions in either *Smart* or *Dullea.* In both of those cases, we denied the claimants' attempts to assert underinsured motorist coverage under policies which were not the policies held by the injured parties. In *Smart,* the plaintiff, who was the administratrix of the decedent's estate and the decedent's mother, sought underinsurance coverage pursuant to her own policy which provided underinsurance limits of $100,000 per person and $300,000 per accident. The decedent had purchased his own Massachusetts automobile insurance policy which provided underinsured motorist coverage of $10,000 per person and $20,000 per accident. The decedent had checked a box for such coverage on his application for insurance and it was provided although no premium was charged for this underinsurance coverage. *Smart, supra* at 145. In *Dullea,* the injured plaintiff had purchased a policy which automatically provided underinsured motorist coverage of up to $10,000 per person with no premium charged for such coverage. The plaintiff did not elect to purchase additional

underinsured motorist coverage and sought benefits under her uncle's policy which provided higher limits.[4] In both cases, we found that the injured parties had their own policies which provided "similar coverage" and were thus precluded under G. L. c. 175, § 113L (5), from claiming coverage under the higher limits provided pursuant to policies held by their respective household members. See *Dullea* v. *Safety Ins. Co.*, *supra* at 39 n.4; *Smart* v. *Safety Ins. Co.*, *supra* at 149-150.

By choosing an underinsured motorist coverage limit of "zero," Hilary Shedd affirmatively elected not to procure any such coverage and she received no such coverage. Cf. *Dullea* v. *Safety Ins. Co.*, *supra* at 40-41 ("[t]he plaintiff had the option and chose not to buy *additional* coverage; that was her election" [emphasis added]). This is precisely the question which we left open in *Smart* v. *Safety Ins. Co.*, *supra* at 149 n.6, when we stated that "[w]e express no view on what the result would have been if [the decedent] had elected to have no underinsured motorist coverage under his policy." The plain language of Shedd's policy stated that household members could not acquire coverage under his policy if they had their own policy "providing similar coverage." Shedd's policy provided for underinsured motorist coverage. Hilary's did not. There was no similar coverage.

We acknowledge Hanover's contention that allowing recovery under Shedd's policy in this case contradicts the statutory intent of the 1988 automobile insurance amendments which were aimed at holding "each named insured responsible for the extent of his or her underinsured motorist coverage." *Dullea* v. *Safety Ins. Co.*, *supra* at 40, citing *Smart* v. *Safety Ins. Co.*, *supra* at 149-150. And yet we will not interpret the disputed policy language against the insured when we find that language to be clear and unambiguous,

---

[4]In both cases, the plaintiffs pointed out that the limited underinsured motorist coverage provided by the injured parties' Massachusetts insurance policies was of negligible worth because the limits ($10,000 per person and $20,000 per accident) were precisely calibrated to equal the compulsory liability limits in Massachusetts. In *Smart* v. *Safety Ins. Co.*, 419 Mass. 144 (1994), the plaintiff argued that because every insured motor vehicle would have liability at or above these limits, the purported underinsured motorist coverage at issue would never come into play. *Id.* at 146. While conceding that the underinsured motorist coverage available was very limited as a practical matter, *id.* at 147. we rejected this argument and found that such coverage "was not illusory." *Id.* at 148.

even if inconsistent with the authorizing statutory framework. Cf. *Allstate Ins. Co.* v. *Bearce,* 412 Mass. 442, 448 (1992), quoting *Cardin* v. *Royal Ins. Co.,* 394 Mass. 450, 453 (1985) (where policy language was favored to the insurer, "no matter how explicit the [policy] language may be, it cannot prevail if it is contrary to the statutory language or the legislative policy of G. L. c. 175, § 113L"). The Commissioner of Insurance (commissioner) authorized this language in automobile policies for the year 1990, and the Shedds were entitled to rely on the common meaning of the language used in the policy they purchased from Hanover. They might reasonably have believed its provisions for underinsured motorist coverage would protect each household member named therein. As it is our responsibility to "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered," *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990), we will respect this justifiable reliance.

As we have noted, the commissioner revised this language in subsequent years to give unambiguous effect to the Legislature's intention, but during the year in which this reliance may have been created by the official charged with translating the intent of the Legislature into the language of insurance policies put out among the public, it would be unjust to solve the problem created by the commissioner's misleading draftsmanship by sacrificing the reliance of the public whom the commissioner is charged to protect.

*Judgment affirmed.*