**FOREST EDWIN BELL and JESSE MILLER, Plaintiffs**

**v.**

**USAA CASUALTY INSURANCE COMPANY, Defendant**

Civil No. 2008-100

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 14, 2009

LEE J. ROHN, ESQ., St. Croix, USVI, *For the Plaintiffs.*

DARYL C. BARNES, ESQ., EMILY A. SHOUP, ESQ., St. Croix, USVI, *For the Defendant.*

GÓMEZ, *Chief Judge*

### MEMORANDUM OPINION

(August 14, 2009)

Before the Court is the motion of the defendant, USAA Casualty Insurance Company ("USAA"), for summary judgment against the plaintiffs, Forest Edwin Bell and Jesse Miller (together, the "Plaintiffs").

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs are a married couple who live in Massachusetts. On or about December 8, 2005, Bell was hit by a car on St. Thomas, U.S. Virgin Islands. Lindsey Evans, the driver of the car, was underinsured.

Bell is insured by USAA, a Texas corporation that does business in the Virgin Islands, under Massachusetts Personal Automobile Policy Number 009139020C71073 (the "Policy"). The Policy has a $10,000 coverage limit for medical payments. USAA has tendered that limit to Bell.

The Plaintiffs commenced this lawsuit in June 2008, alleging that USAA "included or should have included an underinsured coverage in the amount of $100,000 per person and $200,000 per accident." (Compl. ¶ 7.) They further allege that if the Policy did not include underinsured coverage, USAA should have informed them of that fact. The Plaintiffs assert three claims against USAA: breach of contract; breach of the duty of good faith and fair dealing; and bad faith.[1]

USAA now seeks summary judgment against the Plaintiffs. Although the motion purports to seek dismissal of the Plaintiffs' complaint in its entirety, the motion does not expressly address the Plaintiffs' bad faith claim. As such, the Court construes the motion as one for partial summary judgment. The motion is unopposed.[2]

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial.

---

[1] The general allegations section of the complaint also alleges that Miller "was in the zone of danger and witnessed [Bell's car] accident, and suffered loss of consortium." (Compl. ¶ 4.) That allegation does not reappear as a separate cause of action. In a footnote in the conclusion of its motion, USAA asserts that Miller cannot recover against USAA for loss-of-consortium. The Court reads the Plaintiffs' allegation in this regard as surplusage and does not address it here.

[2] The motion was filed on May 4, 2009. Accordingly, the Plaintiffs were required to file their opposition, if any, no later than May 26, 2009. *See* LRCi 56.1(b); FED. R. CIV. P. 6(a)(3). The Plaintiffs did not do so. Instead, on June 25, 2009, they moved for an extension of time to respond to the motion. On July 8, 2009, the magistrate judge granted that motion, allowing the Plaintiffs until July 27, 2009 to respond to the motion. The magistrate judge's order does not grant that relief *nunc pro tunc* to May 26, 2009, the day by which the Plaintiffs' opposition was due.

*Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850, 122 S. Ct. 2559, 153 L. Ed. 2d 735 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

### A. Choice of Law

■ The resolution of USAA's motion requires the Court to consider the Policy. The Policy bears a relationship to two forums: the Virgin Islands and Massachusetts. As a consequence, the Court must determine which of those two forums' laws govern the Policy's interpretation. *See PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (per curiam) (unpublished) ("When two states have a connection to a case and an issue arises on which the states' respective laws differ, a choice of law must be made."). As the basis for the Court's jurisdiction is diversity-of-citizenship, *see* 28 U.S.C. § 1332; 48 U.S.C. § 1612(a), the Court must apply the Virgin Islands' choice-of-law rules. *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988).

■ ■ No provision of the Virgin Islands Code sets forth rules governing choice-of-law in matters of contract interpretation. In the absence of such a provision, the Virgin Islands Code points to the Restatement for the applicable law. *See* V.I. CODE ANN. tit. 1, § 4 ("The rules of the common law, as expressed in the restatements of the law . . . , shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."). The Restatement provides for two choice-of-law scenarios: one in which the

parties have expressly or impliedly chosen which law they wish to have applied, and another in which they have not· elected for any particular state's law to apply.

■ In the first scenario, a contract is interpreted according to the law chosen by the parties so long as "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue" and unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 186, 187 (1989) ("Restatement").

■ In the second scenario, the Restatement requires a determination, based on the balancing of several factors, of which state "has the most significant relationship to the transaction . . . ." RESTATEMENT § 188. Those factors include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* These factors "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

USAA contends that Bell's policy was issued in Massachusetts and therefore that Massachusetts law applies.[3] USAA does not expressly state that the Policy includes a choice-of-law provision but suggests as much by asserting that the Policy "is subject to the laws of Massachusetts" and citing to the Policy itself. (Def.'s Statement of Undisputed Facts Supp. Summ. J. ¶ 6.) The precise provision of the Policy on which USAA relies to support that suggestion is unclear. As far as the Court can tell, the Policy does not explicitly provide that Massachusetts law governs its construction and application.[4]

The United States Court of Appeals for the Third Circuit confronted a similar scenario in *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161 (3d Cir. 1999). The insurance policy in that case contained no explicit

---

[3] Strangely, notwithstanding that contention, USAA cites Virgin Islands law governing the general interpretation of insurance policies.

[4] The Plaintiffs, having elected not to respond to USAA's motion, have offered no input on this point.

choice-of-law provision. The Third Circuit noted, however, that the policy was "drafted in accordance with Indiana law, and includes the [underinsured motorist] Endorsement required by that state." *Id.* at 164 (quotation marks and citation omitted). The court explained that under the Restatement, "a contract's references to the laws of a particular state may provide persuasive evidence that the parties to the contract intended for that state's law to apply." *Id.* at 165 (citing RESTATEMENT § 187 cmt. a). In the Third Circuit's view, "[t]he repeated references to Indiana law in the endorsement, and [the insurer's] unmistakable intent that the [underinsured motorist] coverage as set forth in the endorsement not only comply with, but clearly track Indiana law, demonstrate that the parties at least implicitly and perhaps even explicitly chose Indiana law to govern the policy's terms." *Id.* Based on that reasoning, the court concluded that Indiana law governed the policy.

■ Here, as in *Clover*, the Policy does not explicitly mandate the application of any state's law. It is, however, called a "Massachusetts Automobile Insurance Policy" and stipulates that it "is a legal contract under Massachusetts law." (Def.'s Statement of Undisputed Facts Supp. Summ. J., Exh. A-1 at 5, 10.) Indeed, the Policy elsewhere brims with references to the laws of Massachusetts. For instance, in its introductory section, the Policy states that "[t]here are four Parts to Compulsory Insurance. They are all required by law. Every auto registered in Massachusetts must have them." (*Id.*, Exh. A-1 at 8.) In the Optional Insurance section, the Policy states that "we must sell you any or all of the Optional coverages you wish, subject to certain deductibles and limits specified in Massachusetts law." (*Id.*, Exh. A-1 at 19.) In the Pre-Insurance Inspection explanation, the Policy reads: "Massachusetts law requires that we inspect certain motor vehicles before providing coverage for Collision, Limited Collision, or Comprehensive[.]" (*Id.*, Exh. A-1 at 35.) Most importantly, perhaps, the Policy explains that "[t]here are many laws of Massachusetts relating to automobile insurance. We and you must and do agree that, when those laws apply, they are part of this policy." (*Id.*, Exh. A-1 at 10.)

Under these circumstances, the Court finds that the Policy adequately evinces the parties' intent to have Massachusetts law govern the Policy's interpretation. As such, the Court need not determine whether Massachusetts or the Virgin Islands has a more significant relationship to

the Policy.[5] *See, e.g., Hatchigian v. State Farm Ins. Co.*, No. 07-3217, 2008 U.S. Dist. LEXIS 96161, at \*17-18 (E.D. Pa. Nov. 25, 2008).

 The Court also does not find that the application of Massachusetts law violates a fundamental policy of the Virgin Islands.[6] Both jurisdictions require motorists to purchase basic automobile insurance. *See* V.I. CODE ANN. tit. 20, §§ 701-713; MASS. GEN. LAWS ANN. ch. 175, §§ 113A-113W (Lexis 2009). Moreover, just as there is no requirement under Virgin Islands law that a motorist obtain underinsured motorist coverage ("UIM"), UIM is also not compulsory in Massachusetts. MASS. GEN. LAWS ANN. ch. 175, § 113L(2) (Lexis 2009); *see also Hanover Ins. Co. v. Shedd*, 424 Mass. 399, 676 N.E.2d 835, 836 (Mass. 1997); *Smart v. Safety Ins. Co.*, 419 Mass. 144, 643 N.E.2d 435, 438 (Mass. 1994) (explaining that a "1988 amendment made underinsured motorist coverage optional with the insured . . . and left uninsured motorist coverage as a compulsory one").

Accordingly, the Court concludes that Massachusetts law governs the parties' dispute.

## B. Merits

In Count One, the Plaintiffs assert a breach of contract claim. They allege that USAA has breached the Policy by refusing to tender the Policy's coverage limit.

 To establish a breach of contract claim under Massachusetts law, a plaintiff is required to show "that (1) an agreement was made between the plaintiffs and the defendant supported by valid consideration; (2) the

---

[5]　It bears noting that the Restatement's most-significant-relationship test would likely yield the same outcome. The several factors enumerated above, on balance, weigh in Massachusetts' favor, as the Policy was issued in Massachusetts, probably negotiated there, and the Plaintiffs live in that state.

[6]　Virgin Islands law states that

> [n]o insurance contract delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory, shall contain any condition, stipulation, or agreement which . . . requires it to be construed according to the laws of any other territory, state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other territory, state or country[.]

V.I. CODE ANN. tit. 22, § 820. This provision is inapplicable here, as there is no dispute that the Policy Bell purchased from USAA was not "delivered or issued for delivery in" the Virgin Islands.

plaintiffs have been ready, willing, and able to perform; (3) the defendant's breach has prevented them from performing and (4) the plaintiffs have suffered damage." *Singarella v. Boston*, 342 Mass. 385, 173 N.E.2d 290, 291 (Mass. 1961); *see also Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997) (citation omitted).

USAA asks for summary judgment on the Plaintiffs' breach of contract claim based on two primary arguments. First, USAA asserts that it performed its obligations under the Policy when it tendered the Policy's coverage limit for medical expenses to Bell. USAA has submitted the affidavit of one its claims service managers, Phillip Hearn. Hearn avers that "[t]he limits of Mr. Bell's Medical Payments coverage, $10,000.00, have been paid in full." (Hearn Aff. ¶ 8, May 4, 2009.)

Second, to the extent the Plaintiffs' breach of contract claim is predicated on USAA's alleged failure to tender the UIM limit to Bell, USAA contends that UIM is optional under Massachusetts law and that the Policy simply does not contain UIM because Bell opted not to buy any. In support of that contention, USAA relies on the Policy itself as well as Hearn's affidavit.

The "Coverage Selections Page" of the Policy outlines those expenses that are covered under the Policy. At the top of the Coverage Selections Page, the Policy states: "This policy provides only the coverages for which a premium charge is shown." (Def.'s Statement of Undisputed Facts Supp. Summ. J., Exh. C.) Under the section titled "Optional Insurance," several types of insurance are listed. One of those types of insurance is "Bodily Injury Caused By An Underinsured Auto." In an adjacent column, titled "Premium," the space provided is blank.

■ Based on the competent evidence discussed above and the governing legal authority, the Court finds that USAA has met its initial summary judgment burden of showing that USAA has fulfilled its contractual duty by tendering the Policy's limit to Bell. The Court also concludes, based on the same evidence and authority, that USAA had no duty to tender UIM limits to the Plaintiffs, as it is undisputed that Bell elected not to purchase UIM. *See Dullea v. Safety Ins. Co.*, 424 Mass. 37, 674 N.E.2d 630, 632 (Mass. 1997) ("A limited amount of underinsured motorist coverage was provided by the policy in question. The plaintiff had the option and chose not to buy additional coverage; that was her election."); *see also, e.g., Kelliher v. Hanover Ins. Co.*, No. 2004-01050, 2007 Mass. Super. LEXIS 277 (Mass. Super. Ct. June 22, 2007).

Ordinarily, the burden would shift to the Plaintiffs to come forward with evidence to rebut that of USAA. Because the Plaintiffs have failed to oppose USAA's motion, they have not met this burden. Accordingly, the Court will grant USAA summary judgment on the Plaintiffs' breach of contract claim.

In Count Three[7] of the their complaint, the Plaintiffs assert that USAA breached the duty of good faith and fair dealing. The complaint does not make entirely clear the nature of that alleged breach.

■ Under Massachusetts law, "[e]very contract is subject to an implied covenant of good faith and fair dealing." *Liss v. Studeny*, 450 Mass. 473, 879 N.E.2d 676, 680 (Mass. 2008) (citation omitted). "The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the contract and to ensure that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quotation marks and internal citation omitted). Furthermore, the covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 805 N.E.2d 957, 964 (Mass. 2004).

■ USAA evidently collapses its breach of contract argument with its challenge to Count Three. USAA maintains, for essentially the same reasons as those discussed above, that it owed no duty to tender UIM limits to Bell because Bell did not buy UIM. Because "[t]he scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship," *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667, 684 (Mass. 2005), and because it is undisputed that USAA both tendered the Policy's limit to Bell and owed no duty to tender UIM limits to Bell, summary judgment is warranted on Count Three. *See, e.g., Galvin v. Excel Switching Corp.*, No. 2004-2997-BLS, 2006 Mass. Super. LEXIS 295, at *34 (Mass. Super. Ct. May 31, 2006) ("Because the defendants acted consistently with the clear terms and spirit of the Option Agreement, they did not deprive the

---

[7] Count Two and Count Three are inverted in the complaint due to what must be counsel's inadvertence. That is, what follows Count One is a count labeled as Count Three, which in turn is followed by Count Two. The Court refers to the counts as they are labeled in the complaint, not as they sequentially appear.

plaintiffs of the fruits of their contract. Accordingly, the defendants are entitled to judgment as a matter of law on the plaintiffs' claim of breach of the covenant of good faith and fair dealing.").[8]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant USAA's motion as it pertains to Count One's breach of contract claim and Count Three's claim alleging a breach of the duty of good faith and fair dealing. Count Two's bad faith claim remains pending. An appropriate judgment follows.

---

[8] To the extent Count Three rests on the Plaintiffs' allegation that USAA allegedly "failed to inform" them that they should buy UIM, summary judgment is still warranted. The plaintiffs in *Robinson v. Charles A. Flynn Ins. Agency*, 39 Mass. App. Ct. 902, 653 N.E.2d 207 (Mass. App. Ct. 1995), advanced a similar argument. They claimed that insurance agents owe their clients a duty "to inform and advise them as to the availability of uninsured and underinsured motor vehicle coverage up to the limits of the bodily injury liability coverage the clients carry." *Id.* at 207-08 (alteration and quotation marks omitted). The Massachusetts Appeals Court rejected that position, reasoning that "[s]uch a sweeping duty finds no support, as the plaintiffs' concede, in Massachusetts appellate decisions." *Id.* at 208. The court noted as well that "[s]upport in other jurisdictions [for that position] is spotty at best." *Id.* (citations omitted). The court reasoned that such a duty may arise where there are "special circumstances of assertion, representation and reliance[.]" *Id.* at 207 (quotation marks omitted). No such circumstances are alleged here. *Robinson* clearly forecloses the Plaintiffs' argument in this vein.