TURNER FISHERIES, INC. *vs.* SEAFOOD WORKERS UNION I.L.A. 1572-2. December 12, 1984. *Board of Conciliation and Arbitration. Arbitration,* Collective bargaining, Conduct of proceedings. *Notice.*

Turner Fisheries, Inc. (Turner), brought an application (G. L. c. 150C, § 11) seeking to vacate an arbitration award made by the Board of Conciliation and Arbitration (Board) in favor of the Seafood Workers Union I.L.A. 1572-2 (Union). Turner claimed that (1) the Board lacked jurisdiction to

_____

arbitrate the dispute, (2) the award was procured by undue means, and (3) the arbitrator was biased against Turner. The Union answered and counterclaimed, seeking to have the award confirmed. A Superior Court judge, after a hearing, denied Turner's application and confirmed the award.

We set out the following undisputed facts as background for our analysis. The collective bargaining agreement (agreement) between Turner and the Union, effective May 2, 1981, provided a procedure for the conciliation and arbitration of disputes that might arise between the parties. The agreement stated that, if a dispute should not be settled within a certain time, it had to be submitted to the Board for conciliation and then arbitration, if conciliation should fail. On March 4, 1982, Turner fired an employee, and the Union invoked the grievance procedure. After attempts to resolve the matter failed, the Union filed a unilateral petition with the Board to initiate arbitration. On March 23, 1982, Turner received written notice from the Board of an arbitration hearing scheduled for March 26, 1982. On that date, attempts at conciliation failed, and an arbitration hearing was held. The chairman of the Board served as the sole arbitrator. On July 7, 1982, he filed his decision and his opinion. He ruled that the discharge of the employee was not for just cause and reduced the punishment to a one-day suspension.

1. *Jurisdiction of the Board.* On May 2, 1981, the date that the agreement became effective, G. L. c. 23, § 7, as amended through St. 1980, c. 146, was the statute governing the establishment of the Board and the duties of its chairman. Under that statute the Board was comprised of three associate commissioners of the Department of Labor and Industries, all appointees of the Governor, one who represented labor, one who represented employers of labor, and the third a neutral. See G. L. c. 23, §§ 1, 7. The Board could sit as a tripartite panel on arbitration matters, or the chairman could designate the neutral member of the Board or appoint a nonmember of the Board to sit and act as a single arbitrator. G. L. c. 23, § 7. In 1981, G. L. c. 23, § 7, was repealed, and the Board was reconstituted. See G. L. c. 23C, § 4, inserted by St. 1981, c. 351, § 235. At the time the arbitration hearing was held (March 26, 1982), the new Board was in existence. It consists of the chairman, appointed by the Governor, and two members appointed by the chairman. One member of the Board must be a representative of labor and one must be a representative of the employers of labor. The statute designates the chairman as the neutral member of the Board. The Board may sit as a tripartite panel on arbitration matters. Alternatively, the chairman is authorized to appoint himself or a nonmember of the Board to sit and act as a single arbitrator.

Turner contends that the statutory change in the Board eliminated it as the forum of conciliation and arbitration specified by the parties to the agreement and, therefore, that no agreement to arbitrate existed at the time of the hearing. Because no agreement to arbitrate existed, Turner argues that the Board lacked jurisdiction.

Under G. L. c. 150C, § 11(*a*)(5), inserted by St. 1959, c. 546, § 1, the Superior Court must vacate the award if "there was no arbitration agreement . . . and the party did not participate in the arbitration hearing without raising the objection . . . ." No objection was raised by Turner at the time of the hearing, and it was too late to raise it for the first time before the Superior Court in its application to vacate the award. In addition, even if Turner had raised an objection before the arbitrator, it would have been without merit. Turner argues that in the past under G. L. c. 23, § 7, when there were disputes, Turner had been involved only with the tripartite panel and that it never expected when it signed the agreement that a dispute would be arbitrated by a single member of the Board. That argument ignores the language in the repealed statute that gave to the chairman the power to appoint a single arbitrator. This provision, carried over in the successor statute, G. L. c. 23C, § 4, gives to the chairman the power to decide whether a particular dispute is to be arbitrated by a tripartite panel or by a single person. The fact that Turner's experience under G. L. c. 23, § 7, was with the tripartite panel only did not alter, in any respect, the power of the chairman to decide whether the dispute was to be arbitrated by a panel or by a single arbitrator. That power was in effect at the time that the parties negotiated the agreement which specified the Board as the arbitrator of any dispute. Therefore, the arbitration clause in the agreement was not affected in any way by the statutory change.

2. *Award procured by undue means.* The Superior Court must vacate the award if it was procured by undue means. G. L. c. 150C, § 11(*a*)(1). Turner contends that, under the rules of the Board, the Union was required to serve it with a copy of its unilateral petition by registered or certified mail and that it had not received the copy, contrary to the Union's certification on the petition that it had complied with the requirement. Turner also charges that the Union's petition did not set forth a brief statement as to the nature of the remedy sought. In addition, Turner contends that notice from the Board of the hearing scheduled for March 26, 1982, was not received until March 23, 1982, contrary to the Board's own rules, which required that the notice "be given reasonably in advance of such hearing."

The issue as to the short time between the receipt of the notice of the hearing and the hearing itself is answered by G. L. c. 150C, § 5, inserted by St. 1959, c. 546, § 1, which states that "[a]ppearance at the hearing shall constitute waiver of . . . notice [of the time of the hearing]." No objection to the time of the hearing was made by Turner at the hearing. Nor did Turner raise the issues of lack of receipt of the copy of the petition and failure to set forth the nature of the remedy sought at the hearing. Turner was not prejudiced by the failures in any respect. The Union had met with Turner on at least two occasions prior to the hearing in an attempt to resolve the dispute. Turner was aware of the position of the Union prior to the hearing. At the hearing Turner did not request a continuance or complain that it was not ready to go forward.

Turner also argues that the filing of the award was untimely under the Board's rule requiring that the Board make every effort to render the award within thirty days of the close of the hearing. In this case the award was received some 107 days after the conclusion of the hearing. Turner contends that the Board deliberately delayed the filing of the award in order to punish Turner. There is nothing in the record to support that proposition.

3. *Partiality of the arbitrator*. The arbitrator had been appointed to the Board as a neutral representative on September 11, 1980. Prior to his appointment, he had been employed for a number of years by the Massachusetts Teachers Association as an attorney, negotiator, legislative agent, and political organizer. Turner argues that the arbitrator was required to reveal his past connections with labor prior to the hearing and that his failure to do so showed his "evident partiality," which requires vacating the award. G. L. c. 150C, § 11(a)(2).

There is no claim by Turner or any evidence that, because of his background, the arbitrator had a financial or personal interest in the result of the arbitration or that he had any past or present relationship with the Union, its officers, or its members. In these circumstances, there is no requirement that compels an arbitrator to reveal his past employment record prior to conducting an arbitration hearing. See *Bernstein* v. *Gramercy Mills, Inc.,* 16 Mass. App. Ct. 403, 412-413 (1983).

Turner contends that a comment by the arbitrator during the hearing showed his bias against it. The arbitrator stated, "[T]he way I think it should have been handled was to suspend the person for a longer period of time, then if that didn't work, another suspension for a longer period with the intent of snapping the employee out of his bad habits." We do not have any record of the hearing before us, and we do not know the context in which the statement was uttered. The statement, by itself, does not show any bias against Turner. Finally, Turner argues that the failure of the arbitrator to follow the procedures of the Board showed that he was not impartial. These alleged failures were never called to the attention of the arbitrator. In any event, we do not see how the comment of the arbitrator or his alleged failure to follow the Board's procedures evinced a bias against Turner.

In view of Turner's serious charges, we have examined with care the record furnished to us. We note, among other things, that the arbitrator found in favor of Turner when he rejected the Union's allegation that the employee was discharged for his union activities. We find, in the record, no basis for Turner's allegations.

*Judgment affirmed.*

*Edward A. Gottlieb* for the plaintiff.
*Wayne Soini,* for the defendant, submitted a brief.