LUMBERMENS MUTUAL CASUALTY COMPANY *vs.* NANCY M.
MALACARIA & others.[1]

No. 94-P-163.

Middlesex. December 11, 1995. - March 20, 1996.

Present: BROWN, IRELAND, & FLANNERY, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist. *Arbitration,*
Scope of arbitration, Authority of arbitrator, Waiver, Vacating award.

An insurer that participated in an arbitration proceeding without af-
firmatively denying the coverage sought (underinsured motorist cover-
age in excess of statutorily required minimum levels) thereby waived the
coverage issue as provided in the applicable rules under which the
arbitration was conducted. [188-191] BROWN, J., dissenting.
A party to an arbitration proceeding that did not commence an action pur-
suant to G. L. c. 251, §§ 12 and 13, to vacate or modify the arbitration
award within the thirty-day period prescribed, was not entitled to relief.
[191-192]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 11, 1987.

The case was heard by *James J. Nixon,* J., on a motion for
summary judgment, and a motion for reconsideration was
heard by him; a motion to enter separate and final judgment
was heard by *Wendie I. Gershengorn,* J.

*Kevin Truland* for the plaintiff.

*Michael B. Bogdanow* (*Leo V. Boyle* with him) for the
defendants.

IRELAND, J. Lumbermens Mutual Casualty Company
(Lumbermens) appeals from a final judgment of the Superior
Court which grants the defendant, Nancy Malacaria, declara-
tory relief under two automobile insurance policies issued by
Lumbermens to her and to the defendant, Frank P. Mala-
caria, and which confirms an arbitration award dated

---

[1]Gelsomina Malacaria and Frank P. Malacaria.

November 9, 1987, in Nancy Malacaria's favor. Lumbermens also appeals from the allowance of the defendants' motion for reconsideration which vacated an earlier summary judgment entered in November, 1989, in Lumbermens' favor.

Relying on *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259 (1987), Lumbermens argues that, contrary to the final judgment and the 1987 arbitration award confirmed by that judgment, the defendants were not entitled to "stack" underinsured motorist's protection provided by two separate Lumbermens insurance policies issued to members of the Malacaria household beyond the statutory minimum of $25,000. Lumbermens also argues that the arbitration panel lacked jurisdiction to pass on that particular question of insurance coverage and that Lumbermens properly preserved the question for determination by the Superior Court through its complaint for declaratory relief.

As to the substantive question of insurance coverage, Lumbermens' position is correct. Lumbermens is also correct in its assertion that, absent either a court directive or an agreement in writing between the parties, the arbitration panel was not empowered by the insurance policies to pass on legal questions of insurance coverage. Nonetheless, Lumbermens' appeal fails because (1) it did not affirmatively and timely assert before the arbitration panel that it was contesting coverage as required by the rules governing arbitration proceedings; and (2) it did not seek relief pursuant to G. L. c. 251, §§ 12 and 13, to vacate or modify the 1987 arbitration award. For these reasons, the Superior Court judge was correct in confirming the arbitration award and in vacating the earlier summary judgment in Lumbermens' favor.

*Factual and procedural background.* Nancy Malacaria and her mother, Gelsomina Malacaria, suffered physical injuries when an automobile operated by Nancy was struck from behind by another vehicle. The operator of the other vehicle had an insurance policy (coincidentally also issued by Lumbermens) with minimum liability protection of $10,000 per person, with total protection of $20,000 per accident. That policy was inadequate to fully compensate Nancy and her mother for their injuries, and they therefore sought underinsured motorist's protection under three separate Lumbermens insurance policies covering members of the Malacaria household. The first of these (policy no. 3KM 013 041, with

maximum protection of $100,000 per person per accident) covered the vehicle Nancy was driving when the accident occurred, and had been issued jointly to her and her father, Frank P. Malacaria, as the co-owners of the vehicle. The other two (policy no. 3KM 077 567, for $100,000, and policy no. 3KG 248 937, for $10,000) had been issued to Frank P. Malacaria for two other vehicles which he alone owned. The parties are concerned exclusively with underinsured protection under policy no. 3KM 077 567.[2]

On January 29, 1987, the Malacarias filed a written demand for arbitration with the American Arbitration Association (AAA). Nancy and her mother each demanded $210,000 in coverage for their injuries under the three policies we have described. Nancy's father, Frank, demanded $200,000 in coverage for loss of consortium of his daughter, Nancy, and for emotional distress. On February 5, 1987, Lumbermens and the Malacarias were notified by the AAA that the arbitration proceeding would be governed by its Accident Claims Arbitration Rules (the AAA rules). A copy of those rules was made available to them.

The arbitration proceedings commenced on June 18, 1987. The record from the proceeding indicates that, aside from two oblique references to the general subject of coverage,[3] Lumbermens' representative failed to affirmatively contest the

---

[2]The amount at stake below and on appeal is $75,000. Nancy Malacaria originally demanded $210,000 in underinsured benefits: the maximum $100,000 from the policy on the car she was operating at the time of the accident; the maximum $100,000 from the policy on her father Frank's car; and the maximum $10,000 from the policy on Frank's other car. Lumbermens does not contest the first $100,000; nor does it contest the $10,000 from the third policy, as that figure is below the statutory minimum of $25,000. See *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 452-456 (1985). Lumbermens also does not contest the $25,000 statutory minimum from the second policy. *Ibid.* Accordingly, Lumbermens has paid Nancy Malacaria a total of $135,000 in underinsured benefits ($100,000 plus $25,000 plus $10,000), leaving a difference of $75,000 in *optional* underinsured benefits which, under *Johnson* v. *Hanover Ins. Co.*, *supra*, may be denied where, as here, the policy includes a regular use exclusion clause.

[3]When questioned initially by the arbitrator as to whether there were "legal questions involved in the applicability of these . . . policies", Lumbermens' counsel responded, "I would submit those issues, *if any*, are something that is outside the scope of the arbitration" (emphasis added). Later, Lumbermens' counsel stated that "coverage issues are issues that are traditionally not the subject of arbitration, and . . . they can be decided before or after [arbitration]."

issue of coverage by bringing that issue to the arbitrator's attention and requesting that he rule on the scope of arbitration.

The arbitration proceedings were not concluded on June 18, 1987, but were continued to a later date. In the meantime, on August 11, 1987, Lumbermens filed a petition for declaratory relief under G. L. c. 231A, raising for the first time the question whether a regular use exclusion clause contained in the Malacarias' policies prevented them from stacking their policies to recover the maximum underinsured motorist's protection benefits from all three policies. On the same day the petition for declaratory relief was filed, Lumbermens sought a stay in the arbitration proceedings pending the Superior Court's determination of the question of coverage. The motion to stay was denied without prejudice, however, with no reasons cited by the motion judge. Lumbermens never renewed the motion, but went on to participate in subsequent arbitration proceedings. The record before us does not show that the arbitrators were ever informed of Lumbermens' intervening complaint to the Superior Court raising a coverage issue. In any event, arbitration proceeded to a conclusion on or about September 18, 1987, and yielded an award dated November 9, 1987. That award states in part: "[Lumbermens] shall pay to Nancy Malacaria the sum of TWO HUNDRED AND TEN THOUSAND DOLLARS AND NO CENTS ($210,000.00) with the understanding that this amount is the maximum payable to her under the insurance coverages."[4] Lumbermens never filed a petition under G. L. c. 251, § 12, to vacate the award or one under G. L. c. 251, § 13, to modify the award. Instead, Lumbermens apparently relied exclusively on its motion for summary judgment in the declaratory judgment action, previously filed with the Superior Court on September 4, 1987. The motion was argued before the court and was taken under advisement.

Thereafter, the matter remained essentially dormant for some two years until 1989 when, during a status review before the Superior Court, a judge discovered in the case file an undocketed memorandum by the motion judge who had

[4]Gelsomina Malacaria and Frank Malacaria were awarded $75,000 and $50,000 respectively.

conducted the summary judgment hearing in 1987.[5] That memorandum granted summary judgment in favor of Lumbermens but, as Lumbermens now freely admits, was of no legal effect until re-signed by the motion judge and docketed on November 27, 1989, two years after the arbitration award. The ensuing summary judgment was entered on November 28, 1989. On December 7, 1989, the defendants responded with a motion for reconsideration, which, upon argument, was allowed by the same judge who had considered Lumbermens' earlier summary judgment motion. In his findings on the motion for reconsideration, the judge concluded that the declaratory judgment action was "an impermissible attempt to circumvent the ruling of the [arbitration panel]." Thereafter, the defendants moved for entry of final judgment granting declaratory relief in their favor. The resulting judgment granted the requested relief, confirmed the arbitration award, and vacated the earlier summary judgment.

*Discussion.*

1. *Failure to assert the coverage issue.* We begin with the insurance policy itself, which represents the parties' contract. The policy provides:

> "The determination as to whether an injured person is legally entitled to recover damages from the owner or operator of a responsible auto[mobile] will be by agreement between [Lumbermens] and the injured person. The amount of damages, if any, will be determined in the same way. Arbitration will be used if no agreement can be reached."

In plain terms, this provision commits to arbitration the determination whether an injured party such as Nancy Malacaria can recover damages under the policy from the operator of another vehicle, and, if so, the amount of the damages. These matters typically involve factual determinations of relative or comparative fault, and the extent of injuries proximately caused by the other motorist's fault. By contrast, the provision does not contemplate that legal questions involving the insurer's possible liability to the insured under the policy will be determined through arbitration. Hence, we do not

---

[5]The circumstances surrounding the discovery of the undocketed memorandum were disclosed to us during the oral argument on this appeal.

think that Lumbermens was contractually bound by its policy to submit to arbitration a coverage question, such as the one here presented.

Under AAA rule 1, the parties agreed to incorporate the entire body of AAA rules into any arbitration agreement. The fourth paragraph of AAA rule 4 provides that, following receipt of the acknowledgment of a demand for arbitration, the insurer "shall have thirty calendar days within which to affirmatively deny coverage or to raise an issue as to applicable policy limits." Rule 25 allows the thirty-day period during which Lumbermens could have raised a coverage issue to be extended upon the parties' mutual agreement or "for good cause" found by the arbitrator. Rule 24 provides that if, as here, a party proceeds with arbitration knowing that other provisions or requirements of the AAA rules (e.g., rule 4, 4th par.) have not been complied with, and fails to object in writing, that party is deemed to have waived the right to object. There is no evidence to suggest that Lumbermens ever filed a written objection pursuant to rule 24.

Throughout the period leading up to the initial arbitration hearing on June 18, 1987, and at the June 18 hearing itself, Lumbermens did not affirmatively raise a coverage issue. The general statement made at the initial June 18 arbitration hearing, *supra* n.3, that "those issues [i.e., legal questions of coverage], if any, are . . . outside the scope of the arbitration" did not come remotely close to meeting the requirements of the fourth paragraph of rule 4 that an insurer must "*affirmatively deny coverage* or . . . raise an issue as to applicable policy limits" (emphasis added). Moreover, Lumbermens' contention is totally without merit that it was somehow prevented from raising the coverage issue until the announcement one week before the hearing of the Supreme Judicial Court's decision in *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259 (1987), clarifying the issue of an insurer's right to deny underinsured motorist coverage in excess of statutorily required minimum levels, where the policy contains a regular use exclusion clause. More than one year prior to the announcement of the *Johnson* decision, Lumbermens analyzed in an internal memorandum the identical issue presented in the *Johnson* case, arrived at the same result, and circulated the memorandum to its field offices. Hence, there was no justifiable excuse for Lumbermens' failure to assert a coverage issue before the arbitration commenced on June 18, 1987.

Lumbermens participated in the arbitration proceeding without clear or affirmative objection and, thus, cannot now claim, as it does, that the coverage issue fell outside of the scope of arbitration, or that the resulting award was made in excess of the panel's authority. See *Turner Fisheries, Inc.* v. *Seafood Workers Union I.L.A. 1572-2,* 19 Mass. App. Ct. 925, 927 (1984) (where a party who participated in arbitration, but who failed to raise the issue that no agreement to arbitrate existed, was barred from subsequently raising that issue in Superior Court in an action to vacate the arbitration award). See also *Barletta* v. *French,* 34 Mass. App. Ct. 87, 95 (1993) ("Absent clear evidence that the arbitrators, over the objection of [a] party, decided issues outside the 'arena of arbitration' . . ., the award of the arbitrators is binding upon the parties"). Furthermore, an arbitration panel exceeds its authority only where it awards relief that is beyond the scope of the arbitration agreement, or beyond that to which the parties have bound themselves, or awards relief which is prohibited by law. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990). None of those situations obtains here. Putting aside the coverage issue itself, the relief ordered fell within the actual monetary limits of the policies.

The last paragraph of rule 4 provides:

> "Where the insurer moves in court to contest coverage, administration [of the arbitration claim] will be suspended until that issue is determined. Arbitrators may only decide contested issues of coverage where ordered to do so by a court, or where authorized by law, or where both parties so agree in writing."

At first blush, the quoted language seems to work in Lumbermens' favor where, during the pendency of arbitration proceedings, it filed a petition in court seeking a determination of the coverage issue, and then moved for a stay of the arbitration proceedings. This assumes, of course, an expansive reading favorable to Lumbermens of the quoted rule by which an insurer may file a complaint in court raising a coverage issue at any time during the arbitration process — even after the parties and the AAA have gone to the time, trouble, and expense of conducting actual hearings — and, as a conse-

quence of which, arbitration must then come to an immediate halt. If, as seems far more likely, the time during which "administration will be suspended" by the filing of a complaint is confined to the pre-hearing stage of administrative record-keeping, logging, scheduling and the like (when AAA rule 4, 4th par. requires that coverage issues be raised), then Lumbermens' complaint came too late and it was not entitled to have the hearings suspended. The latter interpretation seems more reasonable, given the thirty-day time limitations imposed by the fourth paragraph of rule 4. Otherwise, the rule would have no effect: a party could simply ignore it, as Lumbermens did, and then, long after the thirty days have passed, commence an action in Superior Court for declaratory judgment.

Beyond that, there is no indication whatever in the record that Lumbermens ever sought a stay directly from the arbitration panel itself when arbitration proceedings resumed the month after its complaint for declaratory relief had been filed, or that it indicated to the panel in any way that it was proceeding with arbitration under protest with reservation of its right to a Superior Court determination of the coverage issues. Under AAA rule 24, Lumbermens therefore waived its right to object to the arbitration proceedings on the ground that it disputed coverage by proceeding with arbitration knowing that the requirements of the last paragraph of rule 4 were not met.

2. *Failure to file under G. L. c. 251 to vacate or modify the arbitration award*. Where an arbitration panel has exceeded its powers in making an award, G. L. c. 251, § 12(*a*)(3), provides an avenue for possible relief to an aggrieved party. Filing under the statute must occur within thirty days of receipt of the award. G. L. c. 251, § 12(*b*). An aggrieved party may also simultaneously file within the same thirty-day period to modify or amend the award under G. L. c. 251, § 13(*a*)(2), based on a claim that the panel has made an award upon a matter not submitted to it. By contrast, an award based upon an error of law may not be challenged under either G. L. c. 251, § 12 or § 13. See in particular G. L. c. 251, § 12(*a*)(5)("[r]elief . . . that . . . could not . . . be granted by a court of law or equity is not ground for vacating . . . the award"); *Dane* v. *Aetna Cas. and Sur. Co.*, 369 Mass. 966, 967 (1976) ("in the absence of fraud, an

arbitrator's award will not be vacated because of an error of law"); *Lawrence* v. *Falzarano*, 380 Mass. 18, 28-29 (1980).

The thirty-day limit during which action must be commenced to vacate or modify an award has been strictly construed. See *Bernstein* v. *Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 408-409 (1983). "[T]he purpose of the short periods prescribed in the . . . [S]tate arbitration statutes for moving courts to vacate an award is to accord the arbitration award finality in a timely fashion". *Id.* at 409, quoting from *Chauffeurs, Teamsters, Warehousemen & Helpers Local No. 135* v. *Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980). By our calculations, the period during which Lumbermens could possibly have availed itself of either statute ended some eight years ago in December, 1987.

The overriding purpose behind the arbitration act, G. L. c. 251, is to provide for the expeditious resolution of disputes through a method "not subject to delay and obstruction in the courts." *Lawrence* v. *Falzarano, supra* at 28. Unfortunately, that purpose is unrealized in this case. The arbitration award was issued in November, 1987, but has been held up in litigation ever since. At this point — over eight years later — Nancy Malacaria has yet to receive a substantial portion of the award.

*Judgment affirmed.*

BROWN, J. (dissenting). On appeal, Lumbermens argues that the issue of stacking underinsurance benefits was properly preserved for judicial decision and that the judge erred in confirming the $210,000 judgment. I agree.

Relying on the public policy encouraging arbitration as "an expeditious alternative to litigation," see *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990), and rule 4 of the Accident Claims Arbitration Rules of the American Arbitration Association ("AAA"),[1] Nancy Malacaria argues that by failing to respond within thirty days

[1]Paragraph 4 of rule 4 reads in pertinent part: "The insurer(s) shall have thirty calendar days within which to affirmatively deny coverage or to raise an issue as to applicable policy limits. If no such procedure is initiated, it will be assumed that there is no objection to arbitration and that the claim is denied."

to her demand for arbitration, Lumbermens waived judicial determination of stacking. While it is true that once in the arbitral arena, arbitral authority is broad and judicial review is narrow, see, e.g., *Plymouth-Carver Regional Sch. Dist., supra,* the initial determination of whether a dispute is arbitrable at all turns on whether the parties agreed to arbitrate the dispute; a party may not be forced to arbitrate a dispute it has not agreed to arbitrate.

Nancy's policies included the then standard Massachusetts insurance arbitration provision; one that required Lumbermens and Nancy to arbitrate (1) whether Nancy could recover damages from the accident-causing driver, and (2) the extent of her damages. Moreover, rule 4 requires that "[w]here [an] insurer moves in court to contest coverage, [arbitration] will be suspended until that issue is determined. Arbitrators may only decide contested issues of coverage where ordered to do so by a court, or where authorized by law, or where both parties so agree in writing." As there is no evidence that Nancy and Lumbermens agreed in writing to arbitrate coverage or that in denying Lumbermens' motion to stay arbitration the court "ordered" Lumbermens and Nancy to arbitrate coverage,[2] the judge correctly ruled in November, 1989, that the Superior Court had jurisdiction to determine Nancy's coverage. See, e.g., *Royal Indemnity Co.* v. *Blakely,* 372 Mass. 86, 87 n.2 (1977) ("The judge was correct in concluding that the arbitration required by the policy related to 'questions concerning the insured's rights against the owner and operator of the uninsured motor vehicle.' [Citation omitted]. The question of the insurer's liability under the policy, apart from the insured's right against the owner and operator of the uninsured vehicle, was for the judge, and the arbitrator's award purporting to deal with such a question" exceeded his authority).

Moreover, the judge properly ruled that Nancy was limited to $125,000 underinsurance coverage under two of the policies.[3] In *Cardin* v. *Royal Ins. Co.,* 394 Mass. 450 (1985), Jayne Cardin, a passenger in a "Sportabout" car was injured in an accident. At the time of the accident, the Sportabout carried $25,000 bodily injury coverage and a like amount of

---

[2]To the contrary, on the first day of arbitration, Lumbermens expressly preserved coverage for judicial determination.

[3]See note 2 of the majority opinion.

underinsured coverage. Additionally, Cardin owned a Chevrolet van separately insured for $25,000 underinsurance benefits. Royal Insurance paid the full Sportabout benefits ($50,000) but, relying on the regular use exclusion in the Chevrolet policy, denied underinsurance benefits under that policy. Based on G. L. c. 175, § 113L's requirement that insurers provide underinsurance coverage, the court ruled the Chevrolet's $25,000 underinsurance coverage available to Cardin. *Id.* at 454-455. In *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259 (1987), the court clarified its *Cardin* ruling. In *Johnson*, Scott Johnson sought to "stack" underinsurance benefits beyond G. L. c. 175's statutory minimums. The court in denying the purely optional benefits stated: "While the Legislature has set minimum coverage limits of 'at least' $10,000 per person per accident, that does not mean that the legislative purpose has been met whenever that person receives the statutory minimum, regardless of her actual damages . . . . Any benefits provided above those [required by §§ 113L and 113C] are purely optional and thus entirely a matter of contract." *Id.* at 264-266. As to policies like the one in the present case, issued before the 1988 amendments to G. L. c. 175, the *Johnson* rule applies. Thus, Frank Malacaria's purely optional underinsurance benefits (i.e., those exceeding $25,000) are unavailable to Nancy as they are excluded under the regular use exclusion provision of the policy.

For the reasons stated, I would set aside the judgment entered on November 4, 1993, and direct that the November 27, 1989, summary judgment be reinstated.