## KATHERINE MERCADANTE *vs.* WORCESTER INSURANCE COMPANY.

No. 03-P-1334.

Worcester. June 10, 2004. - October 18, 2004.

Present: GRASSO, COWIN, & KAFKER, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist. *Motor Vehicle,* Insurance.

In a civil action arising from injuries that the plaintiff sustained in a motor vehicle accident caused by an underinsured third party tortfeasor, the judge correctly granted summary judgment in favor of the defendant insurer on the ground that the plaintiff had underinsured motorist insurance coverage as a household member under her husband's motor vehicle insurance policy with a separate insurer, even though the plaintiff could not recover underinsured motorist benefits under that policy because its benefits were equal to the bodily injury liability limits of the tortfeasor's insurance policy [296-300]; moreover, the judge correctly denied the plaintiff's motion for summary judgment, where the policy issued by the defendant did not provide the plaintiff underinsured motorist coverage as an "occupant" of the vehicle involved in the accident, in that that policy provided coverage only if the occupant was not covered as a household member under another policy [300-301].

CIVIL ACTION commenced in the Superior Court Department on January 19, 2001.

The case was heard by *Judith A. Locke,* J., on motions for summary judgment.

*Charles M. Giacoppe* for the plaintiff.

*John A. Leslie* for the defendant.

GRASSO, J. We consider, once again, the intricacies of underinsured motorist insurance coverage. The material facts are not in dispute. On May 6, 1999, Katherine Mercadante sustained serious injuries in a motor vehicle accident caused by Cynthia Steele, who was insured under a policy issued by Middlesex Insurance Company (Middlesex Insurance) that provided bodily

injury liability coverage limits of $20,000 per person and $40,000 per accident.

At the time of the accident, Mercadante was driving a 1997 Ford Explorer sport utility vehicle owned by Mercadante Funeral Home, Inc. (the funeral home). The vehicle was insured under a business automobile policy issued to the funeral home as named insured by Worcester Insurance Company (Worcester Insurance). The Worcester Insurance policy provided underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident. Mercadante was a listed driver but not a named insured on the policy.[1] An endorsement to the Worcester Insurance policy stated that underinsured motorist coverage would be provided to anyone "occupying" a covered "auto" except if that person had his or her own Massachusetts automobile policy or was covered by a Massachusetts automobile policy of any "household member" providing underinsurance coverage.

At the time of the accident, Mercadante resided with her husband, Kevin Mercadante, who was the named insured on a standard Massachusetts automobile policy issued by The Commerce Insurance Company (Commerce Insurance). As a household member, Mercadante was a listed driver on this policy, which provided underinsured motorist coverage with the minimum statutorily required limits of $20,000 per person and $40,000 per accident, for which Commerce Insurance did not charge any additional premium. See G. L. c. 175, § 113L(1); G. L. c. 90, § 34A.

Mercadante resolved her claim against Cynthia Steele by accepting the $20,000 bodily injury liability limit on the Middlesex Insurance policy. She then filed a claim with Worcester Insurance for underinsured motorist benefits under the funeral home's business automobile policy. Worcester Insurance denied the claim, concluding that it had no obligation to provide coverage where Mercadante was a household member under her husband's automobile policy with Commerce Insurance, which provided underinsured motorist coverage. Mercadante then filed a claim under her husband's policy. Commerce Insurance

---

[1]On May 6, 1999, Mercadante was not an employee, officer, or shareholder of the funeral home.

declined to provide benefits for the accident because underinsured motorist coverage in the minimum statutory amount ($20,000 per person and $40,000 per accident) was not "triggered" where the tortfeasor (here, Cynthia Steele) had $20,000 or more in bodily injury liability coverage.[2]

Mercadante brought this action pursuant to G. L. c. 231A, seeking, inter alia, a judgment declaring that Worcester Insurance had a contractual obligation to provide her benefits according to the underinsurance provision of the funeral home's business policy. Following a hearing on the parties' cross motions for summary judgment, judgment entered for Worcester Insurance. The judge concluded that Mercadante had underinsurance coverage as a household member under her husband's policy, and that any attempt to obtain benefits from the Worcester Insurance policy constituted "stacking"[3] in violation of G. L. c. 175, § 113L(5).

On appeal, Mercadante contends that (1) Worcester Insurance's motion for summary judgment should have been denied because she was not entitled to underinsured motorist coverage as a household member under the policy issued to her husband by Commerce Insurance; and (2) her motion for summary judgment should have been allowed because Worcester Insurance's policy provided her with underinsured motorist coverage as an occupant of an insured vehicle. We affirm the grant of summary judgment to Worcester Insurance and the denial of Mercadante's motion. Where Mercadante was not a named insured on any policy of her own but was a household member with her husband, she was covered by the underinsured motorist provisions of her husband's policy, notwithstanding that benefits were not available because the limits of such coverage did not

---

[2]Mercadante could have recovered benefits pursuant to the underinsured motorist coverage in the Commerce Insurance policy only to the extent that the tortfeasor's liability coverage was less than $20,000.

[3]" 'Stacking' was the practice of combining the uninsured (or underinsured) motorist limits of separate policies to create a larger pool of coverage for a single accident." *Chenard* v. *Commerce Ins. Co.*, 440 Mass. 444, 447-448 (2003). See *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 456 n.7 (1985). We note that this case does not involve stacking because Mercadante is only claiming that she was entitled to underinsured motorist coverage pursuant to the Worcester Insurance policy, not both that policy and the Commerce Insurance policy.

exceed the bodily injury liability limits of the tortfeasor's policy. Moreover, Mercadante was not entitled to coverage as an "occupant" under the Worcester Insurance policy because she was covered as a household member under the Commerce Insurance policy.

1. *Commerce Insurance policy coverage.* Mercadante contends that the motion judge erred in granting summary judgment to Worcester Insurance because she had no underinsured motorist coverage as a household member under her husband's policy with Commerce Insurance.[4] We disagree.

The governing statute is G. L. c. 175, § 113L, which delineates the parameters of insurance coverage as to uninsured motorists, and encompasses by its terms underinsured motorists. See G. L. c. 175, § 113L(1), (2). General Laws c. 175, § 113L(5), added by St. 1988, c. 273, § 47, provides, in pertinent part:

> "(5) Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of insurance coverage available to injured persons. *An insured who is not a named insured on any policy providing uninsured motorist coverage may recover only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident. . . . Any injured occupants who are not named insureds on a policy and who are not insured on a resident relative's policy may obtain uninsured motorist coverage from the named*

---

[4]An order granting summary judgment will be upheld if the judge ruled on undisputed material facts and those rulings were correct as a matter of law. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See also *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). The interpretation of an insurance policy is a question of law that this court can review de novo. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982); *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000); *Chenard* v. *Commerce Ins. Co.*, *supra* at 445.

*insured's policy covering the vehicle they occupy when injured*" (emphasis added).[5]

Under the statute, where Mercadante was not a named insured on any automobile policy of her own providing underinsured motorist coverage, she must look first to recover from the policy of a resident relative (her husband) that provides such coverage, regardless of whether such relative's vehicle was involved in the accident.[6] The question then reduces to whether Mercadante was "covered" under the underinsured motorist provisions of her husband's policy with Commerce Insurance when no benefits were payable to her under that policy because the policy limits of underinsured motorist coverage were the same as the tortfeasor's bodily injury liability limits. To support her argument that she was *not* covered under the policy issued by Commerce Insurance, Mercadante relies on item four set forth on the "Coverage Selections Page" of that policy which states, "[t]his policy provides only the coverages for which a premium charge is shown." Because no premium charge was shown on the Commerce Insurance policy for the statutorily mandated minimum underinsured motorist coverage, Mercadante contends that she was not covered under the plain terms of the policy. We conclude, adversely to Mercadante, that this point is substantially controlled by *Smart* v. *Safety Ins. Co.*, 419 Mass. 144, 150 (1994).

In *Smart*, the Supreme Judicial Court determined that the estate of a named insured on a 1990 Massachusetts automobile policy with the then statutory minimum underinsured motorist coverage ($10,000 per person and $20,000 per accident) could not look for coverage to the policy of another household member that provided considerably higher underinsured motorist coverage. Significantly, the court stated that "[a]lthough the

[5]This statutory provision was enacted in response to several decisions by the Supreme Judicial Court that did allow the stacking of multiple insurance policies in certain circumstances. See *Chenard* v. *Commerce Ins. Co.*, *supra* at 447.

[6]Part 12 of the Commerce Insurance policy, pertaining to "Bodily Injury Caused By An Underinsured Auto," provided that Commerce Insurance would pay damages to or for "[a]ny household member, while occupying [the policyholder's] auto, *while occupying an auto not owned by [the policyholder]*, or if injured as a pedestrian" (emphasis supplied).

underinsured motorist coverage that [the decedent] had, and for which he paid no premium, was not likely to be called into play, it was not illusory." *Id.* at 148. There might be instances when "a tortfeasor's out-of-State vehicle might have had liability coverage with limits less than the limits of [the decedent's] underinsured motorist coverage . . . , and in such a situation [the decedent's] underinsured motorist coverage would be of some value to him." *Id.* at 147-148. Compare *Dullea* v. *Safety Ins. Co.*, 424 Mass. 37, 40 (1997) (even though no premium was set forth on declarations page of policy, a "limited amount of underinsured motorist coverage was provided by the policy in question"). Cf. *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 459 (1999) (insurance policy that provides coverage for some acts not illusory because of potentially wide exclusion). In sum, *Smart* stands for the proposition that underinsured motorist coverage does not depend on either the payment of a premium or the availability of benefits in a particular case. It is the availability of coverage that controls. While Mercadante may not recover underinsured motorist benefits under the Commerce Insurance policy here (where the underinsured motorist benefits were equal to the tortfeasor's policy's bodily injury limits), she nonetheless had such coverage under the Commerce policy.

Mercadante seeks to distinguish *Smart* on the basis that, unlike the decedent there, she was not a named insured and thus could not elect greater limits of underinsured motorist coverage. She also asserts that application of the principles articulated in *Smart* to her situation is inconsistent with the legislative intent of G. L. c. 175, § 113, that "each named insured [be] responsible for the extent of his or her underinsured motorist coverage." *Dullea* v. *Safety Ins. Co.*, *supra* at 40. We reject Mercadante's proffered distinction that because she never had the opportunity to buy more insurance, she should not be bound by the named insured's (her husband's) election as to the amount of coverage. Underinsurance coverage is "limited personal accident insurance chiefly for the benefit of the named insured," *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 452 (1985), and persons connected in the prescribed fashion with the insured. See *Shelby Mut. Ins. Co.* v. *Pratt*, 28 Mass.

App. Ct. 913, 914 (1989). As such, the amount of underinsured motorist coverage is decided by the named insured, and the circle of protected persons has no greater claim than he does as to the amount to be purchased. In consequence, it is not unfair that Mercadante be bound by the coverage limits selected by her husband, who was free to negotiate and contract for whatever underinsured motorist coverage he desired, keeping in mind that Mercadante was not a named insured on any automobile policy of her own and would be relying on the coverage he selected.[7] Cf. *Dullea* v. *Safety Ins. Co., supra* at 40-41.

Mercadante has not alleged that her husband's ability to select particular coverage was hindered in any way. The fact that he did not choose to increase his underinsured motorist limits, and that he was not required to pay a premium for the minimum coverage that was included in the policy, did not render such coverage illusory. Compare *Chenard* v. *Commerce Ins. Co., supra* at 449 ("when the Legislature mandated uninsured motorist coverage it did not intend that such coverage be limited to *named insureds* under a policy, to the exclusion of other household members").

We are not persuaded by Mercadante's contention that her injuries were not covered under the underinsured motorist coverage of the Commerce Insurance policy because the bodily injury liability limit under the tortfeasor's insurance policy was *the same* ($20,000), and not less, than the limit shown on the "Coverage Selections Page" of Kevin Mercadante's policy with Commerce.[8] In both *Smart* v. *Safety Ins. Co., supra* at 148, and *Dullea* v. *Safety Ins. Co., supra* at 39-40, the Supreme Judicial Court rejected the same argument, that because the limited un-

---

[7]Had Mercadante chosen to purchase insurance of her own, she could have selected different, and presumably higher, coverage limits.

[8]Part 12 of the Commerce Insurance policy provided, in relevant part:

> "We will only pay if the injured person is legally entitled to recover from the owners or the operators of all underinsured autos. Such injured person has a claim under this Part when the limits for automobile bodily injury liability insurance covering the owners and operators of the legally responsible autos are:

> "1. Less than the limits shown for this Part on your Coverage Selections Page; and

derinsured motorist coverage provided by the injured parties' policies was "precisely calibrated" to equal the compulsory liability limits in Massachusetts, there was no coverage. See *Hanover Ins. Co.* v. *Shedd,* 424 Mass. 399, 402 n.4 (1997). Moreover, in *Alguila* v. *Safety Ins. Co.*, 416 Mass. 494, 495 (1993), the Supreme Judicial Court held that "underinsurance benefits are not available to a claimant where the tortfeasor's stated bodily injury liability limits and the claimant's stated underinsurance limits are identical." Accordingly, we conclude that although Mercadante was covered by the Commerce Insurance policy, she was not entitled to benefits under it.

2. *Worcester Insurance policy coverage.* Mercadante also maintains that the judge erred in denying her motion for summary judgment because the Worcester Insurance policy plainly provided her with underinsured motorist coverage as an "occupant" of the funeral home's insured vehicle. We disagree.

The Worcester Insurance policy provides that an "insured" includes "[a]nyone else while 'occupying' a covered 'auto.' " As the operator of a covered vehicle under the Worcester Insurance policy, Mercadante was within the ambit of that definition of an "insured" person. However, the policy further qualifies that definition by providing that Worcester Insurance "will not pay damages to or for anyone else who has a Massachusetts auto policy of his or her own, or who is covered by a Massachusetts auto policy of any 'household member' providing underinsured auto coverage." Because, as just discussed, Mercadante was a household member covered under the Commerce Insurance policy issued to her husband, the plain language of the Worcester Insurance policy explicitly excludes Mercadante from recovering underinsured motorist benefits under it.

This conclusion comports with G. L. c. 175, § 113L(5), which provides, in pertinent part, that "[a]ny injured occupants who are *not* named insureds on a policy and who are *not* insured on a resident relative's policy may obtain uninsured motorist coverage from the named insured's policy covering the vehicle

"2. Not sufficient to pay for the damages sustained by the injured person."

they occupy when injured" (emphasis added). The import of this statutory language is that an injured occupant's first recourse is to her own insurance policy or that of a resident relative. *Only* when no underinsured motorist coverage is available under either of these will an injured occupant be able to recover benefits from the policy covering the vehicle in which the injury occurred. Contrast *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. at 453 (exclusionary language in insurance policy will not prevail where contrary to statutory language or legislative policy of G. L. c. 175, § 113L). Mercadante did not fall into this narrow category of injured occupants entitled to recover under the policy covering the vehicle in which the injury occurred.

*Judgment affirmed.*