## VALLEY FORGE INSURANCE COMPANY (CNA) *vs.* GABRIELLE KATZ.[1]

No. 04-P-383.

Norfolk. February 15, 2005. - June 28, 2005.

Present: GREENBERG, SMITH, & GREEN, JJ.

*Declaratory Relief. Insurance,* Motor vehicle insurance, Underinsured motorist, Coverage. *Motor Vehicle,* Insurance. *Practice, Civil,* Summary judgment.

In a civil action, disposition on summary judgment was proper where certain evidence that the defendant introduced did not create a genuine issue of material fact. [761-762]

In a civil action arising from injuries that the defendant daughter incurred as a passenger in her mother's motor vehicle when it was struck by a van owned by the plaintiff insurance company's insured, the daughter could not recover under the underinsured motorist provision of the van owner's commercial motor vehicle policy, where the daughter was not a named insured and could not be considered as such by imputing a special relationship between herself and the van owner [762-765]; moreover, the fact that the daughter could not recover from her mother's insurance policy as a household member, because that policy's underinsured motorist coverage limit did not exceed the bodily injury limit in the van owner's policy, did not entitle the daughter to benefits under the van owner's policy [765-766]; further, the statutory scheme for underinsured motorist coverage under G. L. c. 175, § 113L(5), prevails even when it results in the denial of coverage in the face of equitable considerations [766-768].

CIVIL ACTION commenced in the Superior Court Department on December 13, 1999.

The case was heard by *Robert A. Mulligan*, J., on motions for summary judgment.

*Noah Rosmarin* for the defendant.

*Cory S. Arter* for the plaintiff.

GREENBERG, J. At the time of the alleged tort — an automobile

[1]By her mother and next friend, Deborah Katz.

struck a van in which the defendant, Gabrielle Katz (Katz), was a passenger — Alternative Leisure Co., Inc. (doing business as Kids Mobile, Inc.) (hereinafter "Alternative"), the owner of the van, was insured under a Massachusetts commercial motor vehicle policy issued by the plaintiff, Valley Forge Insurance Company (CNA) (Valley Forge). On the date of the accident, Richard Spicer, the owner and operator of the vehicle that struck the van, was insured under a standard Massachusetts liability policy issued by Metropolitan Property and Casualty Insurance Co. (Metropolitan) with policy limits of $100,000. Katz's mother also had a Massachusetts automobile vehicle liability policy issued by Metropolitan which provided underinsurance coverage for Katz as a relative living in the household. Katz, however, could not recover any money from her mother's policy because its underinsured motorist coverage limit ($100,000) did not exceed the bodily injury limit in Spicer's policy. See G. L. c. 175, § 113L(2).

Katz, through her mother and next friend, brought a negligence action against Spicer and against Alternative and the driver of its van, Maria Bililies. Prior to trial of the negligence case, Katz settled her claims against Spicer for $70,000. A Superior Court jury returned a verdict of no negligence against Bililies and Alternative. Next, on Katz's behalf, her mother made a demand upon Valley Forge for underinsured motorist benefits in excess of $100,000. In its initial response, Valley Forge denied payment under its underinsured motorist provision stating that "it is our evaluation that Gabrielle Katz's injuries do not exceed the $100,000 available under [the tortfeasor] Richard Spicer's policy." This initial response did not raise the issue whether Katz was in fact covered by the policy. Katz then demanded that they arbitrate her claim. Valley Forge initially agreed to do so, but it subsequently elected not to arbitrate the matter and instead filed this action.[2]

Valley Forge brought this declaratory judgment action (G. L.

[2]Although the judge took note that the parties were on the verge of arbitration prior to the instant action, the arbitration had not commenced and thus he proceeded to the merits. Citing *Lumbermens Mut. Cas. Co.* v. *Malacaria*, 40 Mass. App. Ct. 184 (1996), Katz argues that the steps Valley Forge took toward arbitration now bar it from seeking review of the coverage issue in court. We do not follow *Lumbermens* in this case because, in contrast to what

c. 231A), seeking a declaration, inter alia, that Katz was not a named insured under Alternative's commercial motor vehicle policy, could not be considered a "household member" of Alternative, and was not entitled to underinsured motorist coverage under G. L. c. 175, § 113L(5), because she had underinsurance coverage under her mother's policy as a household member.[3] On cross motions for summary judgment, a judge of the Superior Court determined that Katz was not covered by the Valley Forge underinsured motorist provision because neither she nor her mother qualified as a named insured under Alternative's policy, and that Katz was also excluded because she was covered under her mother's automobile policy and its underinsurance provision. Katz appeals from this ruling, arguing that she should be considered a "named insured" on the Valley Forge policy; she is not in any practical sense "covered" by her mother's policy and therefore should not be excluded from the Valley Forge policy; and public policy concerns should lead this court to hold her covered by the policy.

1. There is a threshold matter: Katz argues that disposition on summary judgment was error because she introduced evidence raising a factual issue as to whether Alternative reasonably expected that the underinsured motorist coverage it had purchased extended to all passengers, not just to those who were not covered under a household member's standard automobile policy with underinsurance benefits.

We conclude that this evidence, considered in the light most favorable to Katz, does not create a genuine issue of material fact. As we shall discuss, the policy language on its face does not provide coverage for Katz; Alternative's intent in purchasing the underinsured motorist coverage is relevant, if at all, only on the question of Alternative's reasonable expectation that passengers such as Katz would be covered in a situation such as this. Without engaging in a prolonged discussion of whether or to what extent Massachusetts appellate courts have actually

occurred here, Lumbermens actually participated and completed arbitration, and an award issued. *Id.* at 188-191.

[3]Katz counterclaimed, alleging a violation of G. L. c. 93A and G. L. c. 176D, which prohibit insurers from engaging in so-called "unfair or deceptive practices" in the settlement of claims. The parties settled these counterclaims and they are not before us on appeal.

embraced this doctrine, or how it would apply in the absence of ambiguity, see, e.g., *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 477 (1987), we note that at the least it would impose an objective standard on the parties. See *Bond Bros.* v. *Robinson*, 393 Mass. 546, 551-552 (1984). Applying such a standard, we find nothing in the evidence Katz relies upon indicating that the "structure, content, manner of printing of the policy, or methods and practices of marketing," *Mitcheson* v. *Izdepski*, 32 Mass. App. Ct. 903, 906 (1992), created a reasonable expectation that Valley Forge would provide coverage to Katz. It would not be objectively reasonable for a company purchasing insurance for the primary purpose of protecting itself from liability or other costs occurring from the use of its vehicles, in the face of language in the policy clearly barring coverage for passengers covered by other automobile insurance policies (see part 2, *infra*), and a lack of any explicit statement by the insurance agent, to assume that it had purchased coverage for passengers such as Katz.

2. *Underinsurance coverage.* The underinsured motorist coverage provisions of Valley Forge's standard Massachusetts commercial automobile policy, in effect in 1996, the year Katz's claim arose, in pertinent part, obligated it to "pay all sums an insured is legally entitled to recover as damages from the owner or operator of an 'underinsured motor vehicle.'" The named insured under Valley Forge's policy is Alternative. An "insured person" for underinsurance purposes is defined in a standard form endorsement, as follows:

> "a.  You [the named insured], while 'occupying' a covered 'auto,' while 'occupying' an 'auto' you do not own, or if injured as a 'pedestrian.'
>
> "b.  If the form of your business under Item one of the Declarations is shown as an individual, any 'household member,' while 'occupying' . . . an 'auto' not owned by you, or if injured as a 'pedestrian.' . . .
>
> "c.  Anyone else while 'occupying' a covered 'auto.' We will not pay damages to or for anyone else who has a Massachusetts auto policy of his or her own, *or who is covered by a Massachusetts auto policy of any*

> *'household member' providing underinsured auto coverage.*

"d. Anyone else for damages he or she is entitled to recover because of injury to a person under this coverage." (Emphasis supplied.)

This standard policy language, in most material respects, tracks the language of G. L. c. 175, § 113L(5), which discusses uninsured motorist coverage but also encompasses by its terms underinsured motorist benefits.[4] See G. L. c. 175, § 113L(2). This policy/statutory language bars Katz from making a claim against the Valley Forge policy. There is no question that Katz is not a named insured as defined by the policy. Nor can she be considered a household member, as that is applicable only where the named insured is an individual. See *Andrade* v. *Aetna Life & Cas. Co.*, 35 Mass. App. Ct. 175, 178 (1993). Finally, she is excluded from coverage as a passenger of the van because she is covered as a household member under her mother's Massachusetts automobile policy, which provides underinsurance coverage.

Given these impediments, Katz posits a novel set of arguments for how and why this court should deem her covered by the policy/statutory provisions. First, she claims that, because the insured Alternative was in a special relationship to its passengers, who included children and adults with disabilities, the courts should treat these passengers as "named insureds" of the

---

[4]In relevant part, G. L. c. 175, § 113L(5), inserted by St. 1988, c. 273, § 47, provides:

> "Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of insurance coverage available to injured persons. *An insured who is not a named insured on any policy providing uninsured motorist coverage may recover only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident . . . . Any injured occupants who are not named insureds on a policy and who are not insured on a resident relative's policy may obtain uninsured motorist coverage from the named insured's policy covering the vehicle they occupy when injured.*" (Emphasis supplied.)

policy. Second, since, as a practical matter, Katz received no underinsurance benefits because the policy limits on her mother's policy did not exceed those of the tortfeasor's, she should be entitled to make a claim under Alternative's underinsurance policy as would a passenger not "covered" by a household member's policy. Third, she asserts a public policy argument that coverage should be extended to her, given Alternative's high duty of care in transporting young children, and the inequity of affording her fewer benefits than passengers whose parents failed to purchase any insurance coverage. We deal with these arguments seriatim.

(a) *Special relationship.* Relying on *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.,* 415 Mass. 381 (1993), Katz proposes that she should be considered a "named insured" eligible for benefits under the Valley Forge policy. In *Thattil,* the Supreme Judicial Court ruled that the underinsured motorist coverage in a policy issued to the Dominican Sisters of Charity of the Presentation of the Blessed Virgin (Dominican Sisters) as a nonprofit corporation was available to Sister Thattil, a member of the Dominican Sisters, as a "named insured" because

> "Sister Thattil has merged her identity with that of the Order. In these unusual circumstances we conclude that identity exists between the Order and its individual members. This identity should not be ignored because the policy described the insured in its corporate form."

*Id.* at 388. The court found such an "identity" between Thattil and the Dominican Sisters only because of the unique circumstances in which Sister Thattil lived: her vows precluded her from owning a car or other possessions apart from the Order; thus, it was impossible for her to purchase any form of underinsured motorist coverage to protect herself from the event which befell her. Only a policy issued to the Dominican Sisters as the named insured could provide her coverage. *Ibid.*[5]

Katz asks us to follow *Thattil* here, arguing that, because

---

[5]The court also pointed out that the insurance company that sold the policy to the Dominican Sisters was aware of these unique circumstances and that the agent who sold the policy testified that it was reasonable for the Dominican

Alternative is in the business of transporting children, it should be deemed to have a burden to insure its passengers as "named insureds." This argument misreads *Thattil*. As discussed above, and as the Supreme Judicial Court again explained in *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 78-79 (1994), the unique holding that a person has merged her identity with a named insured is only appropriate where there is something inherent in the relationship between the two that would prevent the individual from being covered by underinsured motorist coverage in the manner otherwise contemplated by G. L. c. 175, § 113L. There is no such inherent bar here. Katz did not merge her identity with Alternative in any sense resembling the facts in *Thattil*. Critically, unlike Sister Thattil, Katz did not live in circumstances that made it otherwise impossible for her or her family to take advantage of the opportunity to purchase under-insured motorist coverage. Instead, Katz's mother had automobile insurance with underinsured motorist coverage from which Katz was eligible to receive benefits. Therefore, we do not view Katz as a "named insured" on Alternative's policy.

(b) *Lack of coverage from Katz's mother's automobile policy.* Katz argues that she is entitled to benefits under the Valley Forge policy as a passenger of the van, despite policy language that specifically excludes passengers "covered by a Massachusetts auto policy of any 'household member' providing underinsured auto coverage." Katz argues that she is not in fact "covered" by a household member's policy providing underinsured motorist benefits since the limits on her mother's policy mean she will not recover any money. Our court recently considered and rejected this argument in *Mercadante* v. *Worcester Ins. Co.*, 62 Mass. App. Ct. 293 (2004).

The facts of *Mercadante* are very similar to those in this case. Mercadante was injured in an accident caused by another driver while she was driving a vehicle owned by a funeral home. She was not the named insured on any automobile policy, nor could she collect any benefits from her husband's underinsurance policy, because its limits matched those of the underinsured tortfeasor's liability limits. Mercadante tried to collect

Sisters to believe that the individual members of the Order were covered. *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.*, 415 Mass. at 384-385, 389.

benefits from the funeral home's underinsured motorist provision, which had higher coverage limits, but the insurer refused, arguing that she was excluded under a provision (identical to Valley Forge's) excluding from coverage any passenger who was "covered by a Massachusetts auto policy of any 'household member' providing underinsured auto coverage." *Id.* at 300. Recognizing that coverage was a statutory issue, this court concluded that Mercadante was still "covered" by her husband's policy in the sense contemplated by G. L. c. 175, § 113L, and was therefore prevented from collecting under the funeral home's policy. *Id.* at 296-300.

(c) *The public policy argument.* Katz also suggests that public policy considerations should lead us to interpret G. L. c. 175, § 113L(5), as requiring coverage in a case such as this where she was a passenger of a professional transportation company with a high duty of care to its passengers, and she will be left without any recourse to insurance for her damages beyond $100,000, a worse position than she would be in if her mother had not responsibly purchased underinsured motorist coverage on her own automobile policy. A pure public policy approach is unnecessary and inappropriate for an intermediate appellate court where there is legislation controlling the issue. However, we consider the public policy points here since this discussion also helps explain why we rejected Katz's arguments that she is a "named insured" and is not "covered" by her mother's policy.

In revising the uninsured and underinsured motorist coverage statute in 1988, the Legislature "undertook to state the policy to which a person injured in a motor vehicle accident should look for underinsured motorist coverage." *Smart* v. *Safety Ins. Co.*, 419 Mass. 144, 149 (1994). Our courts have consistently recognized the legislative design by applying G. L. c. 175, § 113L, in a mechanical manner that holds claimants strictly to the sources of coverage dictated by the statute, even in cases where equitable factors such as those Katz points to were present, and where a claimant is thereby prevented from reaching the only policy with benefit limits beyond an underinsured tortfeasor's inadequate liability limits.

A brief summary of some prior cases demonstrates that the

statutory scheme prevails even when the result is the denial of coverage in the face of equitable factors such as those highlighted in Katz's arguments. In *Depina* v. *Safety Ins. Co.*, 419 Mass. 135 (1994), a wife was injured while operating a motor vehicle owned by a third person. She and her husband owned two cars; she was listed on her own policy as the "named insured," and, because her underinsured motorist policy limits did not exceed the liability limits of the underinsured tortfeasor, she was unable to collect anything from her policy. Nevertheless, the court held that she was barred from collecting underinsured motorist benefits from a separate policy (with higher policy limits) that listed her husband as the "named insured." The court refused to look beyond the dictates of G. L. c. 175, § 113L, even noting that "[t]he fact, if true, that [the husband and wife] owned the two vehicles jointly and paid for them and paid insurance premiums with funds held in a joint checking account makes no difference." *Id.* at 137. Likewise, in *Smart* v. *Safety Ins. Co.*, 419 Mass. 144 (1994), the court ruled that underinsured motorist benefits from a mother's insurance policy were not payable to her son's estate. The son had underinsurance coverage set only at the minimum liability limits for Massachusetts drivers (meaning he could not collect in that case, or any other involving a Massachusetts driver); nevertheless, the court said that such coverage was enough to trigger operation of the statutory scheme, thus preventing his estate from looking to another policy. *Id.* at 148-149. A similarly strict result issued in *Mercadante* v. *Worcester Ins. Co.*, 62 Mass. App. Ct. at 298, even though the accident victim there, like Katz, would recover nothing and was not a "named insured" on any policy. Although Mercadante did not elect the level of underinsured motorist coverage to which she was held on her husband's policy, we noted that "the amount of underinsured motorist coverage is decided by the named insured," and thus it was not unfair to bind Mercadante to the coverage her husband selected knowing it affected her as well. *Id.* at 299.

The approach our courts have taken, then, is to apply G. L. c. 175, § 113L, mechanically even in the face of equitable considerations similar to those Katz points to in this

case.[6] Such factors, therefore, do not lead us to treat her as a named insured on Alternative's policy, or as not covered by her mother's insurance, or as otherwise not limited to § 113L's general directives about which policy an injured person must look to for underinsured motorist coverage.

Finally, Katz's repeated references to the nature of Alternative's business and the high duty of care the company has for its passengers does not affect our analysis of underinsured motorist benefits. This argument reduces to a request to hold Alternative strictly liable for anything that happens to its passengers, or to impose a requirement that all professional transportation companies provide underinsurance to all passengers. We decline to do either. It is not for an intermediate appellate court to change the common-law rule of liability, especially in a case where Alternative is not even a party. Likewise, it is not our role to write additional paragraphs into G. L. c. 175. Cf. *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. at 77-78 (declining to write additional paragraph into standard insurance policy).

*Judgment affirmed.*

.

---

[6]The Supreme Judicial Court departed from the statute's mechanism for determining which policy an injured person must look to for underinsured motorist benefits in *Hanover Ins. Co.* v. *Shedd*, 424 Mass. 399 (1997), where a named insured elected "zero" coverage. This decision, however, was based on the household member's policy, which indicated that it would pay in such a circumstance. The court declined to interpret the unambiguous policy language against the insured, even though the policy was inconsistent with the authorizing statutory framework. *Id.* at 402-403.